# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SARAH S.,

     **Plaintiff,**

**v.**

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

     **Defendant.**

:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION FILE NO.**
**1:17-cv-03812-AJB**

## O R D E R  A N D  O P I N I O N

Plaintiff brought this action pursuant to § 1631(c) of the Social Security Act

("the Act"), 42 U.S.C. § 1383(c)(3), to obtain judicial review of the final decision of

the Commissioner of the Social Security Administration ("the Commissioner") denying

her application for Supplemental Security Income ("SSI").[1] The parties consented to

---

[1]     Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, provides for SSI for the disabled, whereas Title II of the Social Security Act provides for federal Disability Insurance Benefits ("DIB"), 42 U.S.C. § 401, *et seq.* The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)). Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI. In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI. However, different statutes and regulations apply to each type of claim. Many times parallel statutes and

magistrate judge jurisdiction. (Dkt. Entry dated 02/12/18). For the reasons set forth below, the Commissioner's decision is **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART**.

## I.    *PROCEDURAL HISTORY*

On September 16, 2014, Plaintiff filed her application for SSI and DIB alleging a disability onset date of November 15, 2013. [Record (hereinafter "R") 175-82]. These claims were denied initially on October 9, 2014, and upon reconsideration on February 24, 2015. [R93, 97]. Thereafter, Plaintiff filed a written request for hearing. [R116]. Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on August 2, 2016, where she was represented by an attorney and amended her alleged onset date to May 25, 2015, thus nullifying her DIB claims. [R33-52]. A vocational expert ("VE") also testified. [*Id.*].

On October 14, 2016, the ALJ denied Plaintiff disability benefits. [R21-27]. Plaintiff then sought review by the Appeals Council, which review was denied on August 5, 2017, making the ALJ's decision the final decision of the Commissioner. [R1-7].

_____

regulations exist for DIB and SSI claims. Therefore, citations herein should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

AO 72A
(Rev.8/8
2)

Plaintiff filed this action on September 29, 2017, seeking review of the Commissioner's decision. [Docs. 1-2, 3]. The answer and transcript were filed on January 19, 2018. [Docs. 6, 7]. On February 19, 2018, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 11], and on March 21, 2018, the Commissioner filed a response in support of the decision, [Doc. 12], to which Plaintiff replied on March 29, 2018, [Doc. 14]. The matter is now before the Court upon the administrative record, and the parties' pleadings and briefs,[2] and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    *PLAINTIFF'S CONTENTIONS*

Plaintiff claims that the ALJ made the following errors:

1.    The ALJ's decision is based upon an error of law in the evaluation of the opinion of treating physician Goins.

2.    The ALJ's decision is not supported by substantial evidence because it contains multiple errors of fact and is based on incorrect or inappropriate reasons for discounting Plaintiff's symptoms and limitations.

[Doc. 11 at 8, 12].

---

[2]    Neither party requested oral argument. (*See* Dkt.).

AO 72A
(Rev.8/8
2)

## III. STATEMENT OF FACTS

### A. Background

Plaintiff was born in 1965 and was 50 years old on the alleged onset date. [R196]. Plaintiff completed the tenth grade and worked in the past as a babysitter, cafeteria worker, and home health care aide. [R211]. She alleges disability due to due to diabetes, high blood pressure, back pain, depression, pain in her feet, and arthritis. [R210].

### B. Lay Testimony

Plaintiff testified before the ALJ that she had "a lot of problems[,]" including visible knots in her right hand and wrist. [R38]. She also complained of pain in her left shoulder and right knee, [R42], with her knee pain being a "10" on the pain scale, [R43]. She testified that she had problems bending and could not stand for long, and difficulty doing household chores in her apartment because her legs regularly swelled and that she needed to elevate them. [R40]. She further testified that her medical providers wanted her to have a cardiac stress test done because they were concerned that she had congestive heart failure, but she could not afford the test.[3] [R41].

---

[3] The ALJ remarked that this was "hearsay, but for medical opinion I need to get that right from the medical record . . . ." [R41].

AO 72A
(Rev.8/8
2)

## C.    Medical Records

Plaintiff submits that since she has not worked since 2009, [R210], she did not have any income, [R37], and, therefore, her medical treatment consisted of various visits to the emergency room ("ER") and the limited treatment offered by a charity clinic, Healing Bridge Clinic.  [Doc. 11 at 5].

Plaintiff was seen in the Piedmont Hospital ER on November 12, 2014 for a cough with nausea, vomiting, and headache.  [R338].  She returned on Christmas Eve 2014 for a dry cough that began the night before.  [R341].  She had an abnormal ECG,[4] with sinus tachycardia,[5] and indications that she had previously suffered a heart attack ("anterior infarction, age undetermined").  [R346].  She returned to the ER in March and April 2015, showing significantly elevated blood sugars.  [R354].  An abnormal ECG, with indications of a previous anterior infarction, was again noted.  [R357].

---

[4]    An electrocardiogram (EKG or ECG) is a test that checks for problems with the electrical activity of your heart. An EKG shows the heart's electrical activity as line tracings on paper. The spikes and dips in the tracings are called waves.  The heart is a muscular pump made up of four chambers. http://www.webmd.com/heart-disease/electrocardiogram#1 (last visited 3/6/19)

[5]    Sinus tachycardia is typically a normal increase in heart rate that happens with fever, excitement, and exercise.  *Heart Rhythm Soc'y, Heart Diseases & Disorders*, https://www.hrsonline.org/Patient-Resources/Heart-Diseases-Disorders (last visited 3/6/19).

AO 72A
(Rev.8/8
2)

A visit on May 10, 2015 for cough, chest tightness, and fluid retention revealed bilateral lower extremity edema.[6]  [R364].  Her ECG was again abnormal.  [R368]. Differential diagnoses included "acute coronary syndrome ("ACS"),[7] decompensated heart failure, pulmonary embolism, pneumonia, chronic obstructive pulmonary disease ("COPD"), asthma, bronchitis, influenza, anxiety, malignancy[.]"  [R366].  She returned nine days later with complaints of back pain and an x-ray of her thoracic spine revealed multi-level degenerative disc changes.  [R378].

On May 26, 2015, Plaintiff presented to the Healing Bridge Clinic where she was treated for right shoulder impingement and right knee pain.  [R405].  She returned on August 13, 2015 complaining of a two-year history of pain in her feet, wrist, and back.  [R388].  On November 5, 2015, she was evaluated for right knee pain, bilateral upper and lower extremity neuropathy, and a ganglion cyst[8] on her right wrist.  [R382].

---

[6]     Edema refers to swelling caused by fluid in the body's tissues.  It usually occurs in the feet, ankles, and legs, but it can involve the entire body.  MedlinePlus, Edema, https://medlineplus.gov/edema.html (last visited 3/6/19).

[7]     ACS is a term for a group of conditions that suddenly stop or severely reduce blood flow to the hear and includes heart attacks and angina.  MedlinePlus, Edema, https://medlineplus.gov/envcy/article/007639.htm (last visited 3/6/19).

[8]     A Ganglion cyst is a sac filled with a jellylike fluid that originates from a tendon sheath or joint capsule, most often in the wrist, resulting in a benign soft-tissue, knot-like mass that forms below the surface of the skin.

AO 72A
(Rev.8/8
2)

On May 26, 2016, Maurice Goins, M.D., the orthopedist who treated Plaintiff at the clinic, completed a pain questionnaire, in which he indicated that he first examined Plaintiff August 13, 2015 and again on May 26, 2016. [R397-99]. Dr. Goins noted that Plaintiff had an onset of right knee pain and left shoulder pain three years ago which caused constant, severe pain. [R397]. He noted painful range of motion on exam and diffuse intermittent edema. [*Id.*]. It was his opinion that Plaintiff would need to lie down for a minimum of two hours during the normal working day; would need to elevate her feet on a daily basis; and he concluded that she was not physically capable of performing even sedentary work on a full-time basis. [R399]. There were no other opinions from examining physicians in the record and no consultative examinations were ordered.

### D.    Vocational-Expert Testimony

The ALJ asked the VE if Plaintiff could perform her past work (as babysitter, cafeteria worker, and health aid) if she could occasionally lift 20 pounds; frequently lift 10 pounds; stand and sit for six hour in an eight-hour workday; occasionally or frequently, kneel, crouch, crawl, stoop, balance, and take stairs; never use ladders; occasionally be exposed to heights and moving parts and reach overhead with her non-

---

https://www.foothealthfacts.org/conditions/ganglion-cyst (last visited 3/6/19).

AO 72A
(Rev.8/8
2)

dominant arm. [R49]. The VE responded that she could not perform her past work with those limitations, but that sufficient jobs existed in the national economy that Plaintiff could perform, such as laundry worker (DOT #361.687-014, 400,000 positions nationally), housekeeper (DOT #302.685-010, 800,000 positions nationally), or office helper (DOT #239.567-010, 90,000 positions nationally). [R49-50].

## IV.    ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since May 27, 2015, the alleged onset date (20 CFR 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease, right knee, left shoulder pain, diabetes mellitus, and obesity (5'0", 267 pounds, BMI of 52.1) ([20 CFR] 416.920(c)).

. . .

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

. . .

8

AO 72A
(Rev.8/8
2)

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally lift 20 pounds, frequently lift 10 pounds, and stand, sit, and walk for six hours out of an 8-hour day. She can never climb ladders, occasionally climb stairs, stoop, balance, kneel, crouch, and crawl, occasionally reach overhead with the left upper extremity, and tolerate occasionally exposure to hazards.[ ]

. . .

6. The claimant is unable to perform any past relevant work (20 CFR 416.965).

. . .

7. The claimant was born on May 27, 1965 and was 50 years old, which is defined as an individual approaching advanced age, on the alleged disability onset date (20 CFR 416.963).

8. The claimant has a limited education and can communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant in "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

9

AO 72A
(Rev.8/8
2)

. . .

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 27, 2015, through the date of this decision (20 CFR 416.920(g)).

[R23-27 (footnote omitted)].

In his evaluation of Plaintiff's claims, the ALJ found that, although Plaintiff was diagnosed with hypertension, low back pain, right wrist ganglion cyst, and edema, "there is no evidence that these impairments result in even minimal functional limitations." [R23]. He also found that, while she was diagnosed with depression, she "never pursued mental health treatment, was never prescribed psychotropic medications, and the evidence demonstrates she maintained an entirely normal mental functional capacity." [*Id.*].

The ALJ found that Plaintiff did not meet Listing 1.02, which involves major joint dysfunction, because she did not "establish that she is unable to ambulate effectively, nor establish . . . that she is unable to perform fine and gross movements effectively." [R24]. The ALJ also found that, despite her diabetes diagnosis, Plaintiff had no evidence of end organ damage, nor did she have complications with diabetes as described in Section 9.00 or meet the criteria of any Listing in other body systems; and she did not satisfy Listing 9.00 because there was no evidence that she experienced

10

diabetic ketoacidosis, chronic hyperglycemia that produced diabetic neuropathy, or a poorly healing skin infection. [*Id.*].

The ALJ accorded "less than great weight" to Plaintiff's allegations of permanent disability because they were "not entirely supported by the record evidence and . . . contrary to her allegations, treatment notes demonstrate that [Plaintiff] retained a largely normal physical functional capacity." [*Id.*]. The ALJ pointed to an x-ray of claimant's spine showing "no acute findings, normal vertebral body heights, intact sacroiliac joints" and treating provider observations that she "had normal cardiovascular and pulmonary functioning, a normal musculoskeletal range of motion, normal range of motion in the neck, and intact strength and sensation." [*Id.* (citing [R289, 294, 296, 321, 342, 354, 356, 364, 375])]. The ALJ noted that Plaintiff was never advised to seek surgery, physical therapy, or referred to pain management, and "received infrequent treatment overall." [R25].

The ALJ also noted that Plaintiff was non-compliant with medical advice because

> on November 7, 2013, [Plaintiff] admitted drinking regular Pepsi and eating fried foods despite her diagnosis of diabetes. . . . On June 3, 2014, [Plaintiff] reported failing to take her high blood pressure medications for two months. . . . On September 17, 2014, treating physicians noted that [Plaintiff] did not attend water aerobics as advised [and] the record is

11

devoid of any evidence to indicate that [Plaintiff] pursued water aerobics
as advised.

[*Id.* (citing [R270, 288, 297-304, 312, 330])]. The ALJ opined that "Plaintiff's non-compliance with treatment likely exacerbated and prolonged the severity of her symptoms . . . [and] undermines her allegations as a whole." [*Id.*].

The ALJ also found that Plaintiff's activities of daily living are inconsistent with her allegations of total disability:

For example, in a typical day, [Plaintiff] cleans, sweeps, and lies down to elevate her legs. She reported no difficulties shaving, feeding herself, or using the toilet. She prepares meals on a daily basis, cleans for 1-2 hours per day, drives a car, and shops in stores. She pays bills, counts change, handles a savings account, uses a checkbook, and occasionally socializes with others. Plaintiff's ability to engage in this normal range of daily activities, contradicts her allegations of permanent disability and evidences that she retains a greater functional capacity than alleged.

[*Id.*].

The ALJ accorded no weight to state agency physician William Gore's opinion that Plaintiff had mild limitations in social functioning, because Plaintiff received no mental health treatment and was never prescribed psychotropic medications. [*Id.* (citing [R56-57, 294, 364])]. He accorded "some weight" to state agency physicians Shakoora Omunuwa and A. Medina, who opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand, sit, and walk for six

hours in an eight-hour day; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps, stairs, balance, kneel, crouch, and crawl; avoid concentrated exposure to hazards, because they did "not have the opportunity to review the totality of the evidence or to consider the claimant's subjective complaints." [R25-26 (citing [R58-59, 90-91])].

The ALJ accorded "limited weight" to the medical source statement prepared on May 26, 2016 by Dr. Goins, Plaintiff's treating physician, who opined that Plaintiff's right knee and shoulder pain made it medically reasonable for her to lie down for two hours in an eight-hour workday, elevate her legs, and incapable of working full time. [R26 (citing [R397-99])]. The ALJ noted that a finding of disability is reserved exclusively for the Commissioner and the medical evidence did not support Dr. Goins because other treating providers observed normal cardiovascular and pulmonary functioning, normal musculoskeletal range of motion, normal range of motion in the neck, and intact strength and sensation. [*Id.* (citing [R294, 342, 354, 356, 364, 375])].

The ALJ concluded that, considering Plaintiff's age, education, experience, and RFC, sufficient jobs existed in the national economy that Plaintiff could perform, such as "substantially all of the requirements of" light and unskilled work. [R26-27]. Specifically, she could be a laundry worker, housekeeper, or office helper. [R27].

13

## V.    *STANDARD FOR DETERMINING DISABILITY*

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*,

14

245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.

15

*Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## VI.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

16

of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance."  *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

AO 72A
(Rev.8/8
2)

substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VII.  CLAIMS OF ERROR

### A.  ALJ's Omission of Plaintiff's Heart Attack

Plaintiff claims that the ALJ erred by failing to mention "the repeated notations of an abnormal ECG, with evidence of a previous heart attack." [Doc. 11 at 8]. Plaintiff argues that, when combined with her extreme-plus morbid obesity, diabetes, and hypertension, a severe coronary impairment would be expected to further reduce Plaintiff's RFC:

> When the Plaintiff testified at the hearing that her doctors wanted her to have a stress test, which she could not afford, because they [ ] considered she had congestive heart failure, the ALJ summarily dismissed the issue by calling it "hearsay." Notwithstanding the fact that the rules of evidence/procedure are informal in a Social Security hearing, it should have caused the ALJ to look into the matter further – particularly in light of the abnormal ECGs and the possible diagnosis of heart failure in the record.

[*Id.* at 8-9 (citing [R366])]. Additionally, Plaintiff claims that the ALJ incorrectly stated that "treating providers observed that the claimant had . . . normal cardiovascular

18

AO 72A
(Rev.8/8
2)

. . . functioning. . .," [*id.* at 10 (quoting [R24])], claiming that he missed the evidence of the abnormal ECGs. Plaintiff also submits that in concluding, with reference to her diabetes, that there was no evidence of end organ damage, the ALJ erred because a myocardial infarction, as indicated on the ECG, would certainly be evidence of end organ damage. [*Id.* (citing [R24-25])].

First, the Commissioner responds that Plaintiff offers no citation to medical or legal authority that an abnormal ECG would be expected to reduce her RFC and that the ALJ was wrong in stating she did not have end organ damage because a heart attack was end organ damage. [Doc. 12 at 6].

Second, the Commissioner responds that "the medical evidence does not support a finding that Plaintiff has heart damage or a cardiac or pulmonary condition that imposes additional functional limitations." [*Id.*]. The Commissioner cited Plaintiff's June 2014 chest x-ray, which indicated no acute cardiopulmonary abnormalities, [R293]; her December 2014 ECG which yielded normal results, [R344], and an x-ray which confirmed no acute cardiopulmonary abnormalities, [*id.*]; her normal April 2015 cardiopulmonary examination, [R358]; her normal May 2015 chest x-ray and ECG results, [R366, 370], and no cardiopulmonary abnormalities on examination, [R374,

377]; no cardiopulmonary problems on examination in October 2015, [R384, 394, 396, 409]; and no treatment for a cardiopulmonary condition.  [Doc. 12 at 6-7].

Third, the Commissioner responds that, while obesity *can* cause limitations, it does not mean it *will* cause them and the ALJ's statement that he considered Plaintiff's impairments in combination is sufficient to satisfy Social Security Ruling (SSR) 02-1p. [Doc. 12 at 13-15 (citing 67 Fed. Reg. 57,859 (2002); 20 C.F.R. § 416.920; *Wilson v. Barnhart*, 284 F.3d, 1219, 1224 (11th Cir. 2002); *Jones v. Dep't of Health and Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. Jan. 18, 2011))].

Plaintiff replies that although there is little evidence of treatment for heart conditions, she testified that she did not take the stress test ordered by her doctors because she could not afford it and avoided going to the doctor for financial reasons. [Doc. 13 at 1-2 (citing [R43]; *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988))].  Plaintiff submits that, rather than dismissing Plaintiff's complaints, the ALJ should have investigated further.  [*Id.*].

The Court agrees that the ALJ did not mention Plaintiff's abnormal ECG in 2014. However, Plaintiff's alleged onset date was May 27, 2015, and, as the Commissioner points out, the ALJ mentioned medical records from April through May, 2015 that

AO 72A (Rev.8/8 2)

documented normal cardiovascular functioning. [Doc. 12 at 6-7]. Therefore, rather than relying on the absence of any cardiovascular findings, the ALJ relied on normal cardiovascular findings. [R25-26].

Plaintiff also claims that the ALJ incorrectly stated that "treating providers observed . . . normal cardiovascular . . . functioning." [Doc. 11 at 8-10 (citing [R24)]]. However, Plaintiff offers no citations showing that the ALJ's statements were incorrect. Rather, she claims that the treating providers to which the ALJ referred were not, in fact, treating physicians per 20 CFR § 416.927(a)(2) or Eleventh Circuit jurisprudence because they merely "treated" Plaintiff in the ER. [*Id.* at 10 n.6 (citing *Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. Appx. 589, 591 n.3 (11th Cir. May 2, 2006))]. However, nothing in the ALJ's decision indicates that he relied on these providers as "treating physicians"; he mentioned their treatment notes, but did not accord them any specific weight in the way he did with physicians (such as Dr. Goins) who had an ongoing relationship with Plaintiff. [R25]. As a result, Plaintiff has not shown that the ALJ omitted records from the relevant time period (given the amended alleged onset date), misconstrued records, or improperly weighed them based on a non-existent "treating physician" relationship.

AO 72A
(Rev.8/8
2)

Plaintiff also opines that the fact that she had an abnormal ECG result in the past should have reduced her RFC.  [Doc. 11 at 9].  However, as the Commissioner points out, Plaintiff provides no legal or factual support for the contention that a past heart attack prior to the alleged onset date is enough, on its own, to reduce or adversely affect Plaintiff's RFC. [Doc. 12 at 6].   While Plaintiff seems to posit that the ECG in conjunction with her obesity should reduce her RFC, as the Commissioner points out, the ALJ's decision indicates that he sufficiently considered the combination of her impairments. [*Id.* at 13-15].  As a result, even if the ALJ's omission of Plaintiff's heart attack prior to her alleged onset date was an error, it was harmless, as the decision reflects that the ALJ did consider her cardiovascular records during the relevant time period, did not misconstrue them, and considered them in conjunction with Plaintiff's obesity.

Accordingly, Plaintiff has not shown error on this claim.

**B.    ALJ's Analysis of Plaintiff's Other Medical Records**

**1.    Records Concerning Ambulation**

First, Plaintiff claims that the ALJ erred by finding that she could ambulate effectively when the record "is devoid of any observation or evaluation of Plaintiff's ability to ambulate."  [Doc. 11 at 9].  The Commissioner responds that no medical

AO 72A
(Rev.8/8
2)

source indicated Plaintiff has mobility issues with respect to walking or that she needs the use of an assistive device, such as a cane, to ambulate effectively, and, in fact, she demonstrated normal range of motion on examination and x-rays of the spine have demonstrated no acute findings. [Doc. 12 at 7 (citing [R289, 294, 295, 296, 312, 342, 364, 377])]. Although the Commissioner concedes that Plaintiff had right knee pain in October and November 2015 for which she was treated with injections and medication, these records did not document ambulatory issues. [*Id.* (citing [R382, 407, 408])]. Plaintiff replies that swelling in her legs and pain in her knee "could reasonably be expected to cause limitations upon the walking and standing necessary to perform light work, particularly in combination with extreme obesity." [Doc. 13 at 2].

Plaintiff does not refute the records relied upon by the Commissioner to support the contention that Plaintiff's musculoskeletal system functioned normally. Once again, Plaintiff posits without citing any legal or factual basis that, in conjunction with her obesity, her right knee pain should reduce her RFC. [*Id.*]. However, as previously explained, the ALJ's decision indicates that he sufficiently considered the combination of her impairments. [R24-25]. No error has been shown on this point.

### 2. X-ray evidence

Second, Plaintiff claims that the ALJ only cited to normal thoracic spinal x-ray findings in 2014–prior to her alleged onset date–while ignoring abnormal May 2015 findings. [Doc. 11 at 10 (citing [R24, 378])]. The Commissioner responds that, if this was error, it was harmless because the ALJ was clearly aware of Plaintiff's x-ray, as he found that she had the severe impairment of degenerative disc disease. [Doc. 12 at 8 (citing [R23])]. Plaintiff did not reply to this argument. [Doc. 13]. Therefore, the Court deems this claim abandoned. *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (Carnes, J.) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (Evans, J.) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (finding that the plaintiff waived an issue by failing to elaborate on the argument or provide a citation to authority regarding the argument).

As a result, Plaintiff has not shown error on this point.

24

### 3.    Plaintiff's Compliance with Medical Advice

Third, Plaintiff claims that the ALJ recited evidence prior to Plaintiff's alleged onset date, such as her diet and exercise habits and adherence to medication, "to diminish her credibility," when such evidence was not unequivocal in establishing non-compliance with prescribed treatment and, in fact, suggested she could not afford medications.  [Doc. 11 at 9-10 (citing [R25, 270])].

With regard to Plaintiff's diet and exercise habits, the Commissioner argues that Plaintiff can be denied benefits for failing to follow prescribed treatment without good reason under the regulations and she offered none of the "good reasons" afforded by the regulations.  [Doc. 12 at 10-11 (citing 20 C.F.R. § 416.930; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003))].   With regards to her failure to take medications, the Commissioner responds that "an ALJ does not have to consider evidence regarding a claimant's ability to afford his medication, where the ALJ did not rely significantly on her alleged failure to take her medication" and, because the "ALJ provided other cogent reasons for not accepting Plaintiff's subjective statements," including her spinal x-rays and treatment provider notes, he did not err.   [*Id.* at 11-12 (citing *Ellison*, 355 F.3d at 1275; [R289, 294-96, 342, 356, 364, 375])].

AO 72A
(Rev.8/8
2)

"A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins*, 848 F.2d at 1213 (quoting *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987)). The language of the regulations sets forth four requirements before a claimant's disability benefits can be denied or terminated for the willful failure to follow prescribed treatment: (1) the impairment must have been amenable to treatment to restore the claimant's ability to work, (2) the treatment must have been prescribed, (3) the treatment must have been refused, and (4) the refusal must have been willful with no justifiable excuse." *Jones v. Heckler*, 702 F.2d 950, 953 (11th Cir. 1983). "In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored. This finding must be supported by substantial evidence." *Dawkins*, 848 F.2d at 1213. Unless an ALJ's finding that a claimant is not disabled is based significantly on a claimant's noncompliance with treatment, the ALJ's decision will not constitute reversible error. *Ellison*, 355 F.3d at 1275 (finding that an ALJ's failure to consider why a claimant did not follow suggested treatment was not reversible error because the ALJ's determination "was not significantly based on a finding of noncompliance" and was based primarily on other evidence); *see also Beegle v. Soc. Sec. Admin., Comm'r,*

26

482 Fed. Appx. 483, 487 (11th Cir. July 23, 2012) ("Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits."); *Brown v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 813, 817 (11th Cir. Apr. 27, 2011) ("[I]f the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay [for treatment] will not constitute reversible error.").

The Court agrees that the ALJ incorrectly relied on Plaintiff's diet and exercise habits because the records do not indicate that she failed to adhere to prescribed treatment. Specifically, on November 7, 2013, the provider explained that Plaintiff was:

> provided [ ] with verbal and written information on foods to avoid- she had been drinking Regular Pepsi and eating fried foods because that is what her boyfriend demanded she cook. Discussed appropriate food preparation techniques, food portion sizes and what foods count as carb with how to read labels.

[R270]. The provider also stated that Plaintiff

> does not work and she can not afford her medications and she has not had a blood glucose monitor in about 2-3 years. . . . The patient is asked to make an attempt to improve diet and exercise patterns to aid in medical management of this problem.

27

[*Id.*].  If anything, these records indicate that Plaintiff was only advised regarding her diet *after* she described it and highlighted her lack of access to regular blood glucose screenings and medications; they do not indicate that Plaintiff was previously advised to follow a certain diet and admitted unexcused noncompliance.

The Court also finds that the ALJ made unfounded assumptions regarding Plaintiff's exercise habits. [R25].  Although part of her treatment plan on June 25, 2014 was "get water aerobic[s] started," [R317], and the last note reflects that she "has not gotten into water aerobics," [R330], there is a followup note on August 6, 2014 that appears to say that she was "unable to get to water aerobics," [R314], followed by a note on September 17, 2014, that she "has not gone to water aerobics (no ride)." [R312].  A Social Security claimant's refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability.  20 C.F.R. § 416.930(b); *Bellew v. Acting Comm'r of Soc. Sec.*, 605 Fed. Appx. 917, 921 (11th Cir. May 6, 2015). However, "poverty excuses noncompliance," such that noncompliance does not prevent a claimant from receiving benefits where the noncompliance is a result of the claimant's inability to afford treatment.  *Dawkins*, 848 F.2d at 1212-14 (reversing and remanding ALJ's denial of benefits where ALJ relied "primarily if not exclusively" on evidence concerning the claimant's noncompliance with prescribed treatment, without regard to

28

the claimant's ability to afford the treatment).  Accordingly, "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison*, 355 F.3d at 1275.

While the ALJ also found Plaintiff's complaints inconsistent with her activities of daily living, the Court concludes that the ALJ's opinion that Plaintiff failed to follow prescribed treatment was a significant basis to his ultimate conclusion of non-disability, [R25].  In doing so, the ALJ did not comply with the Commissioner's own policies.  The relevant Social Security Ruling instructs that

> if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. *We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*

AO 72A
(Rev.8/8
2)

Soc. Sec. Ruling (SSR) 16-3p, 2016 WL 1119029, at *8 (SSA Mar. 16, 2016) (emphasis added).[9] SSR 16-3p also points out that the individual may be unable to afford treatment and may not have access to free or low-cost medical services. *Id.* The ALJ's decision does not discuss the reasons why Plaintiff did not attend water aerobics as required by SSR 16-3p.[10]

---

[9] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. Social Security Ruling 16-3p; Titles II and Titles XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14,166 (Mar. 16, 2016); 81 Fed. Reg. 15, 776 (Mar. 24, 2016). SSR 16-3p did not alter the methodology for evaluating a claimant's symptoms under the regulations. SSR 16-3p explains that the Commissioner eliminated the use of the term "credibility," which does not appear in the regulations, because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. Otherwise, the methodology outlined in SSR 16-3p is essentially the same as in SSR 96-7p.

[10] Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process. *See Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *see also Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)). Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *see also Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

AO 72A
(Rev.8/8
2)

Likewise, the record does not reflect that the ALJ properly considered Plaintiff's reasons for her noncompliance with other medical advice. The ALJ noted two other instances of non-compliance in addition to not attending water aerobics, all preceding her amended alleged onset date. [R25]. The first was in November 2013, when Plaintiff suffered serious hyperglycemia due to drinking Pepsi and eating fried foods, [R297-304], that the Court previously discussed; and the second occurred in June 2014 when she reported hypertension, but the records associated with that incident indicate that she had "been out of medication since April 2014 and she needs a new prescription. She notes that she does not have any insurance, but she does have an appointment with an income based clinic on 6/25/14." [R288]. The ALJ's consideration of these events even though they occurred prior to Plaintiff's amended alleged onset date is not erroneous, because the ALJ was obligated to develop the medical history record complete medical history "for *at least* the 12 months preceding the month in which" the application for benefits was filed." 20 C.F.R. § 404.1512 (emphasis added).

At the same time, the ALJ's reliance on Plaintiff's noncompliance with her hypertension medication suffers, perhaps more so, from the same failing as did consideration of Plaintiff's failure to attend water aerobics. In concluding that Plaintiff's noncompliance with treatment "likely exacerbated and prolonged the

31

severity of" Plaintiff's symptoms, thereby "undermin[ing] her allegations as a whole,"
[R25], without, as required by SSR 16-3p, "considering possible reasons . . . she may
not comply with treatment or seek treatment consistent with the degree of . . . her
complaints," the ALJ committed reversible error that the Court does not find
harmless.

"A clearly articulated credibility finding with substantial supporting evidence
in the record will not be disturbed by a reviewing court" even if some of the reasons for
questioning the claimant's credibility stated by the ALJ are suspect. *Davis v. Astrue*,
346 Fed. Appx. 439, 440, 441 (11th Cir. Sept. 23, 2009) (reversing district court's
reversal of ALJ's decision denying benefits because it found that inconsistencies
between objective medical findings and claimant's subjective complaints of pain, which
were pointed out in ALJ's decision, constituted substantial evidence supporting the
ALJ's determination, and quoting *Foote*, 67 F.3d at 1562). Said another way, an
adverse credibility determination by the ALJ is subject to harmless-error
analysis. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *see also Wilson v.
Comm'r of Soc. Sec.*, 500 Fed. Appx. 857, 859-60 (11th Cir. Dec. 7, 2012) (concluding
that ALJ's credibility determination based upon plaintiff's failure to apply for worker's
compensation was harmless error where record showed sufficient evidence to support

32

an adverse credibility determination independent of failure to apply for worker's compensation).[11]  In this case, while the ALJ referenced various treatment notes that reflected "a largely normal physical functional capacity," including a finding that she was "well and stable," [R24 (quoting [R352])], that same note, however, reflected that she had been taken off of insulin the previous fall and her Metformin[12] dose was halved, and she came to the Piedmont ER hyperglycemic with a blood sugar level of 700, which was reduced to 290 by two liters of normal saline and insulin.  The attending physician recommended that her Metformin dose be doubled again and to see her primary care physician "asap for recheck and consider insulin." [R352-54].  Similarly, the ALJ concluded that "the normal observations in combination with the conservative

---

[11]     The Court recognizes that the phrase "credibility determination" in Social Security cases has fallen out of favor and the preferred terminology, as reflected in SSR 16-3p, is that a plaintiff's subjective complaints are "inconsistent with the overall evidence of record."    SSR 16-3p, 2016 WL 1119029 at *8.  To the extent that the Court uses the disused term, it is merely a shorthand reference to the current regulatory standard.

[12]     Metformin is used alone or with other medications, including insulin, to treat type 2 diabetes.  Metformin helps to control the amount of glucose (sugar) in your blood. It decreases the amount of glucose you absorb from your food and the amount of glucose made by your liver. Metformin also increases your body's response to insulin, a natural substance that controls the amount of glucose in the blood.  U.S. Nat'l Library of Medicine, https://medlineplus.gov/druginfo/meds/a696005.html (last visited 3/8/19)

AO 72A
(Rev.8/8
2)

and infrequent treatment, undermines the persuasiveness of the claimant's allegations and evidences that her impairments do not rise to a disabling level." [R25]. However, the same medical records also demonstrate that she experienced bilateral lower extremity edema beginning in April 2015, [R364].

In order to determine that the ALJ's decision was supported by substantial evidence, it must be clear the that ALJ took into account evidence both favorable and unfavorable to his opinion. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (holding that an administrative decision is not supported by "substantial evidence" where the ALJ acknowledges only the evidence favorable to the decision and disregards contrary evidence). Here, the ALJ impermissibly cherry-picked evidence favorable to his opinion while ignoring significant evidence favorable to Plaintiff's claim. *Tankersley v. Comm'r, Soc. Sec. Admin.*, Civil Action File No. 1:17-cv-00140-AJB, 2018 WL 1466278, at *23 (N.D. Ga. Mar. 26, 2018). Therefore, in combination with the improper reasoning as to Plaintiff's compliance, the Court concludes that the Commissioner must reexamine Plaintiff's claims.

As a result, the Court **REMANDS** Plaintiff's application to the Commissioner for further consideration of Plaintiff's claims consistent with the discussion herein.

AO 72A
(Rev.8/8
2)

### C.    The ALJ's Weighing of Dr. Goins' Opinion

Plaintiff contends that the ALJ erred in giving limited weight to Dr. Goins' opinion and finding that her edema did not cause any functional limitations. [Doc. 11 at 12-13].  Plaintiff claims that Dr. Goins indicated that she needed to lie down and elevate her feet during the day, which are functional limitations.  [*Id.* at 11-12 (citing [R23, R399])].

In response, the Commissioner argues that the ALJ properly considered the medical source opinions, together with the other evidence, in assessing Plaintiff's RFC. [Doc. 12 at 15 (citing 20 C.F.R. § 416.945(a)(3))].  The Commissioner points out that the ALJ "noted an x-ray of Plaintiff's lumbar spine demonstrated no acute findings, normal vertebral body heights, intact sacroiliac joints, and small anterior osteophytes at L2-3 and L4-5," was "well and stable," and had an entirely normal physical examination on April 7, 2015.  [Doc. 12 at 11 (citing [R294, 354, 356])].  Moreover, an x-ray of her cervical and thoracic spine demonstrated normal findings, [R295, 296]; treating providers observed Plaintiff had normal cardiovascular and pulmonary functioning, normal musculoskeletal range of motion, normal range of motion in the neck, and intact strength and sensation, [R289, 342, 354, 356, 364, 375]; and Plaintiff's treatment was "entirely conservative in nature' with no treating or examining source

35

advising her to undergo surgery or see a pain specialist or physical therapist. [Doc. 12 at 11-12 (citing *Brown*, 425 Fed. Appx. at 815, 817-18; *Sheldon v. Astrue*, 268 Fed. Appx. 871, 872 (11th Cir. Mar. 10, 2008))].

The Commissioner also responds that "the ALJ provided good reasons, supported by substantial evidence, for giving little weight to Dr. Goins' opinion[,]" noting that "other medical providers reported Plaintiff had normal cardiovascular and pulmonary functioning, a normal musculoskeletal range of motion, normal range of motion in the neck, and intact strength and sensation." [Doc. 12 at 17].[13]

---

[13] The Commissioner responded to an argument that Plaintiff did not make in this specification, that is, that Dr. Goins opined that Plaintiff was disabled, an issue reserved to the Commissioner, [Doc. 12 at 16-17]; as a result, the Court will not further address it.

The Commissioner also makes an argument that the ALJ did not make with regard to Dr. Goins' opinion, that it was just boxes checked on a form. [*Id.* at 18]. A court may not accept appellate counsel's post hoc rationalizations for agency actions. *Baker v. Comm'r of Soc. Sec.*, 384 Fed. Appx. 893, 896 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (citation omitted)). If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order. *Id.* (citation omitted); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (same); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984). As a result, the Commissioner's argument in briefing about Dr. Goins'

AO 72A
(Rev.8/8
2)

In her reply, Plaintiff does not discuss this argument except by claiming that if the ALJ did not want to accept Dr. Goins' opinions, he should have sent Plaintiff for a comprehensive consultative examination. [Doc. 13 at 2].

The decision not to give a treating-source medical opinion controlling weight does not mean that the opinion should be rejected, SSR 96-2p, but neither does it mean that it *cannot* be rejected. Eleventh Circuit precedent contemplates such a rejection. *See Pritchett v. Comm'r, Soc. Sec. Admin.*, 315 Fed. Appx. 806, 810 (11th Cir. Feb. 24, 2009) (finding the ALJ did not err in assigning no weight to the treating physician's conclusion that Plaintiff probably was medically disabled, because the ALJ clearly articulated its decision and because the doctor's opinion was inconsistent with his own records); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) ("The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."); *see also Davis v. Astrue*, 287 Fed. Appx. 748, 753 (11th Cir. July 9, 2008) (where court, instead of stating that assigning no weight to a

opinion being just boxes checked on a form is a post hoc rationalization, which the Court cannot consider.

37

AO 72A
(Rev.8/8
2)

treating physician's opinion is impermissible, identified reasons why the ALJ's decision to do so was unsupported by the record).

In determining the weight of medical opinions, the ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) evidence supporting the conclusions; (4) the consistency of the opinion with the record as a whole; (5) the medical expert's area of specialty; and (6) other factors, including the amount of understanding of disability programs and the familiarity of the medical source with information in the claimant's case record. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, the regulations do not require the ALJ to explicitly identify these factors. *See* 20 C.F.R. § 404.1527(d) (stating only that the Commissioner "consider[s] all of the following factors in deciding the weight [he] gives to any medical opinion"); *see also Amilpas v. Astrue*, No. 09-cv-0389, 2010 WL 2303302, *6 (W.D. Tex. May 17, 2010) ("I cannot conclude that the ALJ made a legal error [] because the regulations do not require the ALJ to explicitly address each 404.1527(d) factor.") (R&R *adopted by* 2010 WL 2756552 at *5 & n.38 (W.D. Tex. July 12, 2010)). Nor does the Social Security Ruling that interprets § 404.1527(d) state that the ALJ is required to explicitly identify these six factors in his opinion, only that the treating source medical opinions "must be weighed using all of the factors provided" by

38

§ 404.1527. SSR 96-2p. Lastly, courts have concluded that an ALJ does not err by failing to expressly address each of the factors outlined in 20 C.F.R. § 404.1527(d). *See Armijo v. Astrue*, 385 Fed. Appx. 789, 795 (10th Cir. June 16, 2010) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

Here, the ALJ explained that he accorded weight to Dr. Goins according to these factors by finding, among other things, that Dr. Goins offered an ultimate opinion on Plaintiff's disability (that he could not fully accept) and that Dr. Goins' opinion was unsupported by other medical providers' examinations, including those pertaining to Plaintiff's cardiovascular, pulmonary, and musculoskeletal systems. [R26]. Therefore, the ALJ did not err because he applied the proper legal standards. *Washington*, 558 F. Supp. 2d at 1296; *Fields*, 498 F. Supp. 488. While Plaintiff may take issue with the eventual weight that the ALJ accorded to these opinions, it is not the Court's role to decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210. As a result, Plaintiff's claim of error as articulated does not mandate reversal of the Commissioner's decision.

### D. Not Ordering Consultative Examinations

Plaintiff argues that the ALJ erred by not developing the record because he failed to order that she receive a consultative examination that "would have tested her ability

39

to ambulate . . . the range of motion of her wrists, and grip and pinch strength of her hands." [Doc. 11 at 11 (citing *Thornton v. Astrue*, 356 Fed. Appx. 243, 249 (11th Cir. Dec. 4, 2009); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citing *Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B); 20 C.F.R. § 404.1519a(b))]. Plaintiff also suggests that "the ALJ should have investigated [whether Plaintiff had congestive heart failure] further in light of the abnormal ECG and the swelling in her legs." [Doc. 13 at 2]. Therefore, Plaintiff has complied with the scheduling order and the question is the extent of the ALJ's duty to order a consultative exam. [*See* Doc. 9 at 2-3].

The Commissioner argues that Plaintiff "fails to cite to any evidence sufficient to trigger the requirement for a consultative psychological evaluation." [Doc. 12 at 12-13 (citing *Smith v. Bowen*, 792 F.2d 1547 (11th Cir. 1986); *Doughty*, 245 F.3d at 1281; 20 C.F.R. § 426.919; *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988))].

As a preliminary matter, the ALJ had no special duty to develop the record unless the claimant is unrepresented. *Cowart v. Schweiker*, 662 F.2d 731, 734-35 (11th Cir. 1981) (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir.

AO 72A
(Rev.8/8
2)

Unit B July 17, 1981)[14]).  In the absence of the special duty, a plaintiff must make a more specific showing of prejudice of the failure to develop the record.  *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985); *see also Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).  However, because a hearing before an ALJ is non-adversarial, the ALJ has a basic duty to fully and fairly develop the record, even when the claimant is represented by counsel.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Todd v. Heckler*, 736 F.2d 641, 641 (11th Cir. 1984).

While an ALJ has discretion in determining whether to procure additional medical evidence, he still has an obligation to develop a full and fair record, and where review of the record reveals evidentiary gaps demonstrating unfairness, remand may be warranted.  *Gallina v. Comm'r of Soc. Sec.*, 202 Fed. Appx. 387, 388-89 (11th Cir. Oct. 25, 2006); *cf. Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. Feb. 18, 2014) (holding that "[w]here medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment") (punctuation omitted).

---

[14]     Decisions issued by a Unit B panel of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *See Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

AO 72A
(Rev.8/8
2)

The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. *Reeves*, 734 F.2d at n.1.

It is true that the parties have pointed to no part of the record that specifically tested Plaintiff's ability to ambulate. However, it is also true that the ALJ found Plaintiff's shoulder and knee pain and diabetes to be severe based on treating providers observations of reduced range of motion and her receipt of a knee injection. [R23]. Although both Plaintiff and Dr. Goins opined that these impairments imposed limitations, such as the need to elevate her legs for two hours a day, the ALJ did not fully credit these limitations, and instead, crafted a far less restrictive RFC, [R24-26], based upon reports describing normal range of motion, conservative treatment, and unremarkable musculoskeletal system examinations. [R25].

The ALJ found that Plaintiff had severe impairments based upon limited range of motion and treatment for musculoskeletal issues, but then cited Plaintiff's conservative treatment and other records noting normal musculoskeletal findings as the basis for finding these impairments less limiting than Plaintiff or Dr. Goins alleged. [*Compare* R23 with R24-26]. There was little in the way of objective medical records that explained Plaintiff's bilateral lower edema after May 2015, when she reported it

at Piedmont ER, [R363, 364], although an EKG reflected occasional PVCs,[15] [R368], and she was assessed with unspecified essential hypertension. [*Id.*]. This suggests an evidentiary conflict that the ALJ cannot resolve as a layperson who is not qualified to interpret the medical records and findings. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring); *Jackson v. Colvin*, Civ. Action File No. 1:14-cv-01868-AJB, 2015 WL 5601876, at *16 (N.D. Ga. Sept. 23, 2015) (Baverman, M.J.).

A consultative examination may be necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence. 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."); 20 C.F.R. § 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both

---

15      Premature ventricular contractions (PVCs) are extra heartbeats that begin in one of the heart's two lower pumping chambers (ventricles). These extra beats disrupt regular heart rhythm, sometimes causing a person to feel a fluttering or a skipped beat in the chest. Mayo Clinic Patient Care & Health Information, https://www.mayoclinic.org/diseases-conditions/premature-ventricular-contractions/symptoms-causes/syc-20376757 (last visited 3/11/19).

AO 72A
(Rev.8/8
2)

medical and nonmedical, is not sufficient to support a decision on your claim."); *see also Thomas v. Berryhill*, No. 2:16-00581-N, 2017 WL 3996411 at *4 (N.D. Ala. Sept. 11, 2017) (citing *River v Astrue*, 901 F. Supp. 2d 1317, 1328 (S.D. Ala. 2012)). Consequently, the Court finds that the lack of a medical opinion as to Plaintiff's physical limitations presents a gap in the record that could reasonably affect the outcome of the case at step three and that the ALJ therefore should have made reasonable attempts to fill with a consultative examination and opinion.

Accordingly, the Court **REMANDS** the case for the Commissioner to order a consultative physical examination to resolve any conflict regarding the functional limitations posed by Plaintiff's severe impairments.

## VIII. *CONCLUSION*

In conclusion, the Commissioner's decision is **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART** for further consideration of Plaintiff's application. Specifically, the Commissioner's decision is **REVERSED AND REMANDED** for further consideration of the reasons for Plaintiff's non-compliance and so that a consultative examination may be conducted concerning the functional limitations posed by Plaintiff's severe impairments. The decision is **AFFIRMED** in all other respects.

AO 72A
(Rev.8/8
2)

The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED and DIRECTED**, this the __11th__ day of March, 2019.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

45

AO 72A
(Rev.8/8
2)